Case 15-1548, Robert McKay v. William Federspiel et al. Oral argument, 15 minutes per side. Mr. Ellison for the appellant. Good morning, Your Honors. Have you informed the clerk if you want to reserve time for... I have already taken care of such. Thank you very much. And how much time have you requested? Two minutes. Thank you. Thank you. Proceed. Your Honors, this morning the case that's before you is unique in that this is not an expression case. This is not an access to courts case. This is a case in which I'm arguing for this court to recognize as a matter of first instance a little branch off the First Amendment known as the information gathering branch. In this, I have based this case primarily on two decisions, one authored by one of the panelists today, the Glick case. In Glick, it was held that the videotaping of public officials is an exercise of First Amendment liberties. The trial court below erred in that he concluded that there was no First Amendment at all, that in the courtroom the First Amendment is dormant and full. I believe that to be an error, and I'm arguing to this court that this was an error. I think the real issue that's before the court today is, is the limitation placed by the Saginaw County courts and ultimately enforced by the sheriff's deputies who are the police in this case, the enforcement of a restriction on the First Amendment right, is that permissible? I'm struggling with the preceding question as to whether you have standing. Okay. Did you address the, I think probably we are in the injury in fact arm of the three standards from Lujan. Can you address why you have satisfied the injury in fact standards? I believe we have because of the Babbitt decision. The United States Supreme Court in Babbitt, the court needs to be mindful that this is not, my client has been injured and is suing for injuries. This is a pre-enforcement action. As a pre-enforcement action, the injury has not yet physically occurred. And so what the Supreme Court has done is developed a test for this very set of circumstances, and there's two elements that are required. One is, there needs to be an intention to gauge in the course of conduct that is prescribed as being unlawful or prohibited. And in this case, the affidavit, both the verified complaint and the affidavit that was attached in the lower court record as Exhibit K. On the First Amendment, wasn't that affidavit not filed in the court record until you were on your second motion for summary judgment? It was the same, I believe it was the same arguments that were made in the verified complaint as well. So for that argument, for the First Amendment claim, you have only the amended verified complaint. Isn't that correct on the record? The amended complaint is not verified. That's why there was an affidavit that was in support of that aspect. The court essentially in the procedural aspect, there was a verified complaint because I moved for a preliminary injunction, and that served as the basis for the factual predicate for the preliminary injunction. The issue there is, is my client someone who is about to be injured is essentially the requirement here. Why don't you break it down? Courts generally, as I understand it, break it down into three components. The intent to engage in a course of conduct, the arguably affected with a constitutional interest, and the final credible threat of prosecution. So let's start with the intent to engage in a course of conduct. I'm struggling with how you meet that standard because this is not a case in which you have challenged, been prosecuted for violating, nor have you followed the provision of the rule itself that would allow you to seek permission to tape in a courtroom. Tell me how you have shown an intent to engage in the course of conduct. My client has, by the affidavit that's in the record, as well as the complaint itself, is seeking that he wants to do this recording. But for, and I believe the language in the affidavit, I have the affidavit in front of me, it says but for. I'm struggling with whether you can use the affidavit because this is the first motion of the two motions for summary judgment. My understanding of the record is that that affidavit was not filed until the second motion for summary judgment. Am I wrong? I'm not sure off the top of my head. It was a very procedurally complicated case because initially there was essentially three substantive motions. The first motion was the motion for preliminary injunction. The court essentially jumped over the standing argument because he concluded that there was no standing because there was no First Amendment right. Let me ask you this related to Judge Strange's question. Let's assume that she's correct and it wasn't filed until the second one. Is that fatal to your standing argument? If not, why not? I don't think it is, and the reason being is my client, as part of his original verified complaint, was seeking to actually undertake these activities. He didn't actually make the application, though, to the court. He didn't actually file permission to record. That's correct because what the argument is is that the existence of that very policy, that very way it's in place, is unconstitutional. Counsel, why not seek permission? You have an order in place that specifically provides for these kind of, you might characterize them as ad hoc judgments, but there was no threat to him in seeking permission. He wasn't going to be prosecuted for seeking permission. That does seem to raise a serious standing issue when you have that alternative available and the permission was never sought. Well, the permission here was never sought largely because the policy, the electronics ban policy that's in place itself, is being alleged as being a violation of the act. Under STFL, you don't have to go through the processes of an unconstitutional procedure in order to suffer the harm, in order to challenge that very policy. I mean, essentially, I could have instructed my client to either try to blast your way through the front door sheriff's deputies, and, of course, there would have been an adverse reaction, and I think the signs around the courthouse foretell the problems he is going to reach if he tries to do that. The problem for the court is that there's a constitutional standing requirement because if you just say this is a problematic law and anybody in the world can come in and have standing to challenge that, I think you have a constitutional issue about whether there is redressability, whether there is harm, all of the constitutional standing provisions. And for that reason, the law requires you to show an injury in fact, which begins with the intent to engage. Perhaps you could tell me a little more about the second component, which is arguably affected with a constitutional interest. I'm struggling with that because here what we've got is a courtroom and areas around the courtroom that are defined. The cases that you cite and argue from seem to me to be very different. The Glick case, the Boston Commons is not the same, is it, as a courtroom under Sixth Circuit jurisprudence? I believe as it stands right now, understanding Glick is a First Circuit case. However, the U.S. Supreme Court has held that a trial courtroom is a public place. That is the Richmond newspaper's decision. And so I think what we have here is a circumstance where the courts have long been treated almost as a temple in a way, as a temple in democracy, and therefore it would be unheard of to record in such a circumstance. The test that I believe that was laid out in Glick was, and the language of Glick is, if I may read from the very language of it, is that the video recording of public officials is an exercise of First Amendment liberties. Counsel, you seem to take the view that just because a courtroom is open to the public, it follows from that that any exercise of a First Amendment right, such as taking a video in the courtroom, that it follows from that. But isn't it important to understand what kind of a public space it is? I mean, we have different kinds of public spaces. Just because it's open to the public, it doesn't follow that any exercise of a First Amendment right there is permissible. That seems to be your position. Well, I mean, if we were to take the Glick case and change the facts slightly and say arguably that the city of Boston has made it a crime to video record public officials, police officers, in Boston Common without the permission of the police officer at the time, would that change the outcome of Glick? And I don't think that would. And essentially here what we're treating it as is we're treating the courts as something ultra-different as a public space. But isn't that the question? Isn't the question the Supreme Court's decision in Estes and the Sixth Circuit decision in Conway that declined to recognize any constitutional right to record courtroom proceedings? Aren't those fatal to your argument? I don't think so. One reason for under Conway, if I can dispense with Conway right off the bat before I jump into Estes, which I think is the more important decision, Conway dealt with the right of access. That's how the issue was framed is that I'm being precluded from being in the courtroom completely. My client is not precluded from the courtroom. My client is precluded that once he's in the courtroom he can't use his iPhone or his personal recording device to make a record of public activities, of public officials that are being conducted in a public space. Estes, now I will acknowledge that Estes is troubling to my case, but I don't think it's fatal. And the reason why is, as Justice Clark noted, and it's the line I used in the introduction of my brief, is he didn't foreclose it. It was just at that time in the 1960s, and we must remember in the 1960s, television technology, cameras were the size of Volkswagen Beetles and cords were the size of fire hoses. Today, a recording device has been minimized to a small device, and the size analogy is a deck of playing cards. Is the problem with the disruption of the proceedings that the camera in the corner is big, or is the problem when someone in the audience holds up a recording device and points it at someone who is sitting in the witness stand or points it to the judge, is it size or is it disruption of the nature of the proceedings? If it's the latter, assuming it's the latter, couldn't we say the same thing about police officers when they're in the middle of a very dangerous pullover? Cops routinely argue that being pulled over at a particular time is the most dangerous aspect of a police job. In Glick, for example, Mr. Glick was 10 feet from recording. So if the concern is actually the disruptive aspect of it, we would have no First Amendment right anywhere, whether it's a police officer or a court. What about the rights, though, of other people? Is there a right, though, of others in the courtroom not to be recorded? And I always think about criminal proceedings. What about those? Do we have to balance your client's right against the rights of others in there who may elect not to be recorded? Again, if we point to you, if we use Boston Commons as the example, would a spectator who's out at a parade have an expectation of... But Boston Commons is going to be different than the interior of a courtroom where proceedings are going on and you have people who are intimately involved in those proceedings and you have other spectators. I mean, nobody can doubt that somebody sitting in the courtroom has the right to make notes or maybe even make sketches or listen and almost take a transcript. But the camera and recording that is different. You can look at disruption as one angle, but then there's the dissemination aspect potentially. So isn't that something we have to consider? I know your light is on, but please respond. I guess the argument that I would say in opposition to that would be... I disagree with that. And the reason being is that, again, looking to Supreme Court precedents, Supreme Court says a trial courtroom is a public place. It has to be understood... But it's a public place with a very specific purpose. I'm just characterizing it as public. It doesn't follow from that that you can exercise the information-gathering function that you invoke in a way that you could on the Boston Commons, which is a very different kind of public space. You seem unwilling to acknowledge that public spaces come in many different forms. I would acknowledge that public spaces do come in many different forms, and that's, I think, the real issue that this court needs to decide upon is the trial court below said there is no First Amendment right at all in a courtroom. The problem here is I think that's an error of law. And so as a result, and I think the real question is, what is the proper scope of a court to be able to limit the First Amendment activity? Not simply, in this case, the Saginaw County Courts, by the sheriff's deputies, have banned all photography except for permission given by a judge. That means you have to get a license from a judge in order to be able to exercise a First Amendment activity. I have one final question. Sure. I would like you to address the third component of the injury in fact standard, which is the credible threat of prosecution. Would you agree with me that our law is clear that subjective chill alone is insufficient? I would agree. However, this is not a subjective chill case. And the reason being here is, for example, the case in which, for example, you were, I believe, a concurring opinion on the Glenn case. Those were pastors who weren't about to commit, for example, a hate crime. There was no way they were going to undertake any of the activities, so there was no threat to them for being prosecuted under the hate crimes, for example. Here we have a case where my client wants to audio and video record in a courtroom, and if he goes in and tries to do it anyway, but for this electronic ban policy that's in place, under the current electronics ban order, he would be subject to contempt. Unless he got permission from the judge, and unless he were granted permission by the judge in that courtroom.  And I understand you're saying that that itself is a harm. Correct. Because it's an unnecessary infringement on his First Amendment right. But there is that procedure in place. Correct. And I'm arguing that that procedure is improper. Not constitutional is what you said. Well, there's two aspects to this. There's the aspect that under the First Amendment, there is a First Amendment liberty, and I'm hoping I can get across this point today, if I can leave you with this thought. There is a First Amendment liberty to record public officials doing public business. The question I think this court has to decide is, is the curtailment of those First Amendment activities in a courtroom permissible, and to what extent they're permissible. Here I'm arguing that the methodology adopted by the Saginaw County Courts and the Sheriff's deputies is an impermissible way to curtail the First Amendment liberties that exist. Because the policy that they utilize is a license-based system. It prohibits. You have to get permission to exercise your First Amendment rights. And the next step beyond that is even assuming that the court can say, all right, the courts can limit First Amendment activities in a courtroom. However, the methodology you have to use has to be one that complies with all aspects of the Constitution. In this case, I'm asking that it be applied strict scrutiny in that it has to be a compelling government reason to limit First Amendment liberties, and it has to be narrowly tailored. Let me just understand. So your argument is that there is no, in a courtroom, because it's a public place, First Amendment rights may not be curtailed by any rule. I'm arguing that they exist. The trial court below said they didn't exist at all. And that's the error that I am bringing to this court. And I think the court is in an excellent position, given Glick, to rule that that is an incorrect conclusion of all. There is a First Amendment right. There is First Amendment rights in a courtroom because it's a public space. The question becomes then for this court is, what is the constitutionally permissive form of curtailment of those First Amendment rights? And in this case, the Saginaw County ban, the electronic ban policy that was put in place, prohibits it, except for with the discretion exercised by a judge, using a policy that has no standards, no directions, no guidepost. And so I know this is, the trial court below, I think, made somewhat of a spaghetti mess of a nice hierarchy way to deal with this, because, and that's the subject title of one of my briefs, is it puts the cart before the horse. He said there's no First Amendment right, so therefore there is no standing. There is no First Amendment. One last question. Yes. Did he say there is no First Amendment right in a courtroom, or did he say there is no First Amendment right to record courtroom proceedings? I believe he said the prior, rather, and that was in the order into the decision on the preliminary injunction. All right, thank you. Okay. Just one other thing. So your argument, you would say that our decision in Mesinvah was where we said that courtrooms are different, that they are basically non-public spaces. You would say that's wrong and we would need to. Well, in, you said Mesinvah? Yes, Mesinvah v. Allam. Well, the problem with that case is that, again, a lot of these ones are being challenged under the right of access cases. This is a different, a slightly different. This is a pre-enforcement case. Correct, correct. And the point here is that this is a little bit different of a branch. This is a first impression issue, and I know I'm putting a lot of weight on your shoulders in order to find this because contrary to the case law that has come down the pipeline so far, whether it's in this circuit or other circuits, I've always dealt with this usually as a reporter or a media entity trying to get into a courtroom with their equipment to live televise a trial. And the courts have long kind of been reluctant on that and have said, and they really haven't come back and said whether there's a First Amendment right or not. I think, and that's why I'm asking for this court to adopt, excuse me, establish a test that would set forth these circumstances in which recording would be constitutionally permissible, if at all. And that's the issue that I think that this court, and I think we're struggling with because, as Judge Ludington noted below, there is no real test to deal with this sort of circumstance that we find ourselves in. Now, I cannot believe, I'm sorry. Just for the purpose of the First Amendment analysis, does it make a difference in the Glick situation if that individual who happened to observe what was happening between the police and the individual being arrested did not have the First Amendment right to record? There would have been arguably no accountability for the way in which the police were acting. In the courtroom setting, which is public, and there are many other people there observing it, the media, they're often there observing it, there are many ways in which the government officials remain accountable for what they are doing because of all the other individuals who can be there to observe, to take notes, and to report to the public what's happening. In that way, there's a very different, a great difference between those two public spaces. Does that matter for your First Amendment argument? I don't think it does, and the reason being is essentially if we take that conclusion out to its far ends, it would be the government selecting the methodology in which to challenge something that's perceived to be a bad policy or illegal in some way. For example, you're talking about in a courtroom there would be an appeal process, there would be reporters who could report on different things. The problem that we see here is that we're treating the courtroom as something wholly separate from the rest of the world, and I think is what we're doing here, or at least that's what the court cases seem to be doing. The courtroom is someplace that can't be bothered by being part of what I believe are First Amendment activities because it might be disruptive. What I'm asking this court essentially by this case here today is to acknowledge that the courts are an integral part of the governmental system. There are issues that are decided and debated and worked out in a courtroom, and that individuals should have the ability to bring in that information and later on transmit that information out to some other use. In the way that you've kind of... You said later on, but given the level of technology right now, there would be no... If we adopt your position, the courts really would not be able to control the point and the time of distribution because I would imagine that at some level with technology now people could live stream it from small devices or do any other things. You talked before about the cameras being able to come in and report live. Can you guarantee that that doesn't happen now? I can't guarantee anything. I'm merely one lawyer in this system, obviously. How could we? A court who said, okay, you can record on your iPhone or whatever, if we adopt your position... I think we'd have another case for another day in the fact that you're asking... In this case, Mr. McKay... I'm only following up on your phrase at a later time. Sure. And I think that's a fallacy. If I may respond to that, I think what you're asking is that would it be permissible, if I could rephrase what you're asking here, is it permissible for a court to ban live broadcast from the courtroom as opposed to recording? Would that be constitutionally sufficient? No, that's not really what... Okay, I apologize then. But I guess I'm less asking you a question than challenging your statement. I think we're okay. I guess the point I would like to be, if I could finish by saying here, is that the point I would like to get across would be is that the trial court judge below basically said, essentially said, that First Amendment activity, First Amendment liberties are dormant in the courtroom. I'm arguing that this was an error. Now, the question then, the next step is, beyond that would be... Thank you, Tom. I want you to save it for your last two minutes. Thank you very much. Thank you. Good morning, Your Honors. Karen Daly on behalf of the defendants. I think you're pretty clear on what my position is from what I've heard so far today. I just want to address the standing issue first. I think this case can be dismissed based on the standing issue. I don't even think you need to get to the First Amendment issue. The plaintiff here does not allege that he has already been prohibited. He doesn't allege that he had applied for and was denied a permit to possess an electronic device. He argues that this is not a subjectively chilled case, but that's exactly what he alleges in his complaint. He says that his First Amendment rights were subjectively chilled. So this is a subjectively chilled case, and an allegation of being subjectively chilled, that's insufficient to establish an injury in fact. This is just like the Morrison case that this court decided. That was a case where the student, he was a Christian. He believed part of his Christian beliefs was to tell other people what his beliefs were, and he had homophobic beliefs. He claims he did not make any statements because he was afraid of being punished. That's exactly what's happening here. He's choosing not to bring in the electronic device because of the perception that he may be punished. That goes to the third element that Judge Stranch referenced earlier, the credible threat of prosecution. In this case, as far as the directive goes, the deputies have no authority to issue any contempt charges. They can't fine, they can't incarcerate, they can't prosecute. I'm looking at the order itself, though. I'm wondering why the lieutenant would have issued that kind of memo if not to instruct department members to enforce it. He told them that their job was to warn people of the possibility of sanctions. I thought he had said we would give them the opportunity to take their... We're going to enforce it, you get to go take your recording device and put it in your car. They said that they would be given the choice, just like any other prohibited item, if they bring a gun in, if they bring a knife in, they're allowed to go back to their car and leave it in their car. Here, that's all they were instructed to do. In fact, in the directive, they were specifically told not to hold anyone, just to ask them to... They've never had an issue with this. That's the problem. Every court I've ever been into, every circuit court, that's policy. In fact, I went to an argument with my iPad, couldn't bring it in because I didn't have my bar card. It's standard policy in circuit courts. But even under the electronic policy, there's no guarantee of sanctions. Again, the trial judge has the discretion to allow. If he's told to go back to his car, he can apply for a permit. Is there really a plausible argument that the appellant here, if disclosing to a judge what he wanted to do, he wanted to be able to go into the courtroom with his cell phone, electronic device, and record the proceedings, that a judge might say, sure? Really, that's not a plausible position, is it, that the judge would do that? I don't know. I mean, that's up to the judge. I mean, that's what the courts have said. That would cut the heart out of the order if the judge were to do that. Well, the judge has the discretion. I imagine they said there are allowed permits for recording weddings, for recording when I was sworn into the bar, my parents videotaped that. Back then, I'm not sure. He wants to go into just a run-of-the-mill trial, you might say. That's what he wants to record. He's not talking about a wedding or some ceremonial event. Well, maybe, but that's what he needs to show for constitutional standing. He has to show an injury in fact, and he does not show that here. Even if he did have standing. Excuse me. Do you distinguish? You started out by saying there's no need to go to the merits of the constitutional argument here. But the standing argument, to some extent, sort of blends into the merits argument, that piece that talks about arguably affected with a constitutional interest. What does that mean, arguably affected? It's not a very exacting standard, is it? Couldn't you argue that even the individual who wants to go into the courtroom to record has an argument that he has a constitutional right to do that? Now, it may be heavily circumscribed, but at least there is an arguable position that he has such a First Amendment interest, isn't there? No. Based on the Sixth Circuit case law and the U.S. Supreme Court case law, no, I don't believe he does have an arguable interest in recording in the courtroom. What about the areas outside the courtroom? Doesn't this order cover the entirety of the Saginaw County Courthouse? No. No, and if you look in the record, there are pictures of everywhere where they are labeled. It only applies to floors where the courtrooms and court-related facilities are located. But to the entire floor where they're located, correct? No. There's even some signs. If you look at the pictures, I actually have some, but if you look at the pictures, there's an arrow that says this way, there's no cell phones or recording devices permitted beyond this point. The stairwells say no recording devices permitted beyond this point. It's not applied to the lobby, the administrative or legislative offices, or anywhere outside the building. So it's very specific where this is applied. It's the courtrooms. It's the judges' chambers. It's the clerk's offices. It's the court-related facilities. Which includes some hallways and some open spaces, correct? Correct, outside of where witnesses meet. That's explained, I believe, in the policy and in some of the case law, too, that you can't even, it doesn't, the protection of the witnesses doesn't end at the courtroom threshold. They're discussing, a lot of witnesses have to wait out in the hallways before they can come in and testify. The distraction alone of recording devices, I was at a Detroit Red Wings game last week, and the people standing up recording and taking pictures and just recording plays was so distracting. And that was at a huge arena with thousands of people there. In a courtroom, people expect their privacy. People are already reluctant to participate in courtroom proceedings. And if you start allowing people to record, it would be such a disruption in the court. And the judges have the authority to regulate that, especially where it doesn't implicate a First Amendment right, as it doesn't here. Unless the court has any questions, I would rely on my brief for the rest of my arguments. Thank you. Thank you. In brief response, one response to the counsel's argument, she just indicated that there's an element of privacy in a courtroom. I don't believe there's any element of privacy in a courtroom. That's the point of when you have public disputes and you bring them to the public forum, it becomes no longer private. It's been brought to the public forum for resolution. So I don't think there's an expectation of privacy inside of a courtroom, especially one that's open to the public, even with or without recording. What about in the case of anonymous jurors? I'm sorry? What about in the case where you have anonymous juries in certain cases? I think her argument would go to something like that, but hers is much broader. But isn't that a situation where you do have, at least for that segment, some? That would go towards, then I think that would be a permissible, perhaps compelling interest for the government to be able to justify in a strict scrutiny application to warrant a narrow tailoring of an interest to be able to circumvent or to circumscribe certain First Amendment activities in that limited instance. What about how frequently do you have people approach the bench and have a colloquy with the judge? And the whole purpose of approaching the bench to have a colloquy is so that it is not said out in the hearing of the jury or other persons in the room. Isn't that a fairly traditional thing that we see in trials? And I think that would be, but however, why would that be any different from a person sitting in the gallery to not be able to pick that aspect of it up? There's not a necessity. No, but your argument is that everything that goes on in the courtroom is subject to the right of the public to see and view it, and our questions regarding an anonymous jury or approaching the bench to have a colloquy with the court on a certain issue are routine examples of limitations within the courtroom of the access to the public to information and activities that go on. It seems to me that the existence of those vitiate your argument. May I respond? Please. Thank you. Again, this case is not about access. If in that particular aspect a member of the public... No, no, no. Those are not access examples. You're sitting right there in the courtroom, and someone else is arguing in front and says, may I approach the bench? Sure. And both attorneys come up, and there is a private colloquy with the judge. That is routine in trials. So why isn't that problematic in your argument? I'm not arguing, and maybe I misled the court in my argument. I'm not arguing that a person has a First Amendment right to record every word of everything that's said in a particular courtroom setting. That's an admission that there's already existence of limitations on First Amendment rights within the courtroom. What I am arguing is that where a person has been permitted, where the public is permitted into the courtroom, there should be the corollary right to record what they observe from their vantage point of where they're at. And that's what I'm arguing to the court today, is it's not a matter of a member of the gallery can't run up in the conference at the bench that you're referencing and record what's being said in that particular aspect. What I'm arguing is if a member of the public is sitting in the gallery and being able to observe what's going on, they should be able to have the right to record because the right to record, again, is a First Amendment right. It's a First Amendment right. It includes the right to speech and signs. So anyone who has, under your argument, a right to sit in the gallery has a right to sit in the gallery and hold a sign saying anything that they want to say that is consistent with a First Amendment right. How is that different? That is different because that's an expression case, and I specifically today have disavowed. This is not an active participant case. This is a case of where my client is seeking to passively gather information. All I'm asking for, essentially, is a recognition that the paper and pencil of yesterday, today is the iPad and the iPhone. But when you talk about the iPad and the iPhone, I want to go back to my example of the anonymous jury. You said the person should be able to record from their vantage point, and you were saying, I agree they should be able to run up at the bench and get in the middle of the huddle up there and record the private conversation. But the person going back, sitting back, who has the anonymous jury in their view with modern technology, they could, under your example, record that, use crowdsourcing technology, identify the people who are heretofore only identified by numbers. They could take that technology and actually pierce that anonymity with technology. Again, I guess I would respond to that by saying that may be a compelling reason to curtail First Amendment, but what the issue here is, does the First Amendment right exist at all in the courtroom? And what may be, in the case of an anonymous jury, that could be a compelling reason with a narrowly tailored approach to be able to address that specific circumstance to limit the scope of First Amendment activities as narrowly as possible. What we've done is, First Amendment, if I may, just in a very broad sense, the First Amendment, I believe, requires a surgical scalpel. These types of orders, and the one that's before you today from the Saginaw County Courts, is a blunderbuss gun approach to dealing with. You say that your client sitting in the spectator's gallery with a camera is really no different than the person sitting next to him without a camera, and hence your client with a camera should be able to photograph the proceedings. Your premise seems to be that the basis for the order,  there's no basis for it. Why are you so dismissive of that interest that in part underlies this order? Because I guess the problem I have with that is that the witness is already in the courtroom. They're already before the public. They're already before their names are known, their existence is known. What they're testifying to can be reported out in the public. Myself, what I see this as is that this is an attempt to curtail a new technology that would provide for a basis for communication about what's going on in the courtroom later on. And I acknowledge your argument earlier about simultaneous, but I guess I would point this court, and I think an answer to your question would be is the decision in Alvarez, which, again, we have to think of the First Amendment as not a very specific point in time, but a spectrum. And in Alvarez, they concluded that the act of making a recording is necessarily included within the First Amendment activity because the right to then share that message would be largely ineffective if the act of making it is prohibited. And so what your argument, the question you've put forward to me today would be is is there a difference between the two of them, being the person who's recording versus one that's not, what difference would it make if that person was holding a piece of paper and a pencil and drew the witness and knew their name and knew what they testified to? Why is the court afraid of modern technology? And that's essentially, and I'm not asking this court, but in a theoretical sense, why are we afraid of technology? If we're concerned about witness intimidation, if that is the concern, that the existence of a person, the existence of the public is going to intimidate the witnesses, why do we have public trials? Won't the existence of the public listening, won't that have an effect on it? But as the Constitution requires, certain things have to be done in an open and transparent way that can be later recorded and, I think, recorded and discussed broadly. And I'm asking, what I'm asking this court to do is, 50 years ago, this argument could be here if the court had said, I'm going to ban all pens and pencils in the courtroom. You can't take notes because taking notes could be, you could write down what the person says and then go out later and talk about it. There's the same parallel, it's just today the technology is different. Originally, e-mail is not protected by, there's no word e-mail in the Fourth Amendment. But today we recognize that e-mail is part of, because technology has changed, society has changed, these are parallels onto things we already know and protect. Recording is no different than the pen and pencil. We appreciate both arguments. Thank you very much. I appreciate being here. The case under advisement and you will issue an order in due course. Would you call the remainder of the cases, please?